UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-9893 JGB (SHKx)** | Date | April 5, 2024 |
| Title | *Immigrant Defenders Law Center, et al. v. Alejandro Mayorkas, et al.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   Order (1) GRANTING Plaintiffs' Motion to Enforce Compliance with Court Order (Dkt. No. 305); and (2) VACATING the April 8, 2024 Hearing (IN CHAMBERS)

Before the Court is Plaintiffs' motion to enforce compliance with this Court's October 19, 2023 order (the "Order") compelling completion of the administrative record. ("Motion," Dkt. No. 305.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion and **VACATES** the April 8, 2024 hearing.

## I. BACKGROUND

**A. Procedural Background**

The proceedings in this case are fully summarized in this Court's March 15, 2023 order on Defendants' motion to dismiss and Plaintiffs' motion for class certification (Dkt. No. 261) and its Order on Plaintiffs' motion to compel completion of the administrative record and privilege log ("Order on MTC," Dkt. No. 290). Here, the Court provides an abbreviated summary of the proceedings relevant to the instant Motion.

On October 28, 2020, Plaintiffs Immigrant Defenders Law Center ("ImmDef"), Jewish Family Service of San Diego ("JFS") (together, "Organizational Plaintiffs"), and eight individuals filed a Complaint for Injunctive and Declaratory Relief against Defendants. ("Complaint," Dkt. No. 1.) Defendants included the Secretary of the Department of Homeland Security ("DHS"), the Chief of U.S. Border Patrol, U.S. Immigrations and Customs

Enforcement ("ICE") and others. (Id.) As alleged in the Complaint, Organizational Plaintiffs are nonprofit organizations which exist to serve immigrant and refugee communities. (Id. ¶¶ 21, 22.) Individual Plaintiffs are asylum seekers subject to the Migrant Protection Protocols ("MPP") and required to wait in Mexico while their asylum applications are adjudicated. (Id. ¶¶ 14-20.) Plaintiffs sought to enjoin Defendants from continuing to implement policies affecting asylum seekers waiting at the U.S.-Mexico border. (Id. ¶ 10.)

On August 13, 2021, Plaintiffs filed a First Amended Complaint ("FAC," Dkt. No. 143), which Defendants moved to dismiss on December 1, 2021. (Dkt. No. 167.) On December 3, 2021, Defendants filed a notice of agency action related to the motion to dismiss, referencing a court-ordered reimplementation of the MPP program. (Dkt. No. 168.)

On December 22, 2021, Plaintiffs filed a Second Amended Complaint, thereby mooting Defendants' motion to dismiss the FAC. ("SAC," Dkt. No. 175; see Dkt. No. 193.) In addition to the Organizational Plaintiffs, the SAC was filed on behalf of twelve individuals (collectively, "Individual Plaintiffs"). (SAC ¶¶ 13-25.) The SAC names DHS Secretary Alejandro Mayorkas, DHS, U.S. Customs and Border Protection ("CBP") Commissioner Chris Magnus, Executive Assistant Commissioner of CBP's Office of Field Operations ("OFO") William A. Ferrara, Border Patrol Chief Raul Ortiz, CBP, Acting Director of ICE Tae D. Johnson, and ICE as Defendants. (Id. ¶¶ 26-33.) The SAC alleges harms arising from the initial implementation of MPP by the Trump Administration and certain actions by the Biden Administration in ceasing its wind-down of the policy. (See id.) Plaintiffs assert the following claims for relief: (1) violation of the Administrative Procedure Act (APA) premised on the violation of the right to apply for asylum; (2) violation of the APA premised on access to counsel; (3) violation of the Fifth Amendment Due Process Clause right to a full and fair hearing; (4) violation of the APA premised on the unlawful cessation of the MPP wind-down; (5) violation of the First Amendment (on behalf of Individual Plaintiffs); and (6) violation of the First Amendment (on behalf of Organizational Plaintiffs.) (Id. ¶¶ 329–91.)

On March 15, 2023, the Court granted in part Defendants' motion to dismiss the SAC and granted Plaintiffs' motion for class certification. (Dkt. No. 261.) In its order on Defendants' motion to dismiss, the Court permitted all but one of Plaintiffs' claims to proceed. (See id. at 43–44 (finding that Plaintiff's fourth cause of action was moot and dismissing same without leave to amend).)

On August 15, 2023, Defendants produced a Certified Administrative Record ("CAR"). (See "CAR Certification," Dkt. No. 274.) On September 7, 2023, Plaintiffs filed a Motion to Compel Completion of the Administrative Record and Privilege Log. ("MTC Completion of the Administrative Record," Dkt. No. 277.) On October 19, 2023, the Court granted in part that Motion. (Order on MTC.) The Court ordered Defendants to complete the Certified Administrative Record ("CAR") by December 1, 2023, and to produce a privilege log of any documents withheld by the CAR on grounds of privilege by December 15, 2023. (Id. at 16.) The Order specifically required Defendants to complete the CAR with the following five categories of documents:

1. Communications and agreements with the Mexican government;
2. Communications from, agreements with, and records of meetings with the White House;
3. Communications from, agreements with, and records of meetings with the Department of Justice ("DOJ") and the Executive Office for Immigration Review ("EOIR");
4. Documents Defendants issued to migrants enrolled in MPP 1.0; and,
5. MPP implementation guidance documents that are sufficiently similar to those included in the initial CAR.

(Id. at 4–14.)

On February 1, 2024, Plaintiffs filed the instant Motion to Enforce Compliance with Court Order, arguing that Defendants had failed to comply with the Court's Order on the Motion to Compel Completion of the Administrative Record and Privilege Log. (Motion.) In support of the Motion, Plaintiffs filed a declaration of counsel Hannah R. Coleman. ("Coleman Decl.," Dkt. No. 305-1.)

On February 21, 2023, Defendants filed an Opposition. ("Opposition," Dkt. No. 308.) In support of the Opposition, Defendants filed three declarations: a declaration of David J. Palmer, Chief of Staff for the Office of General Counsel, United States Department of Homeland Security ("DHS") ("Palmer Decl.," Dkt. No. 308-1), a declaration of S. Harun Ahmed, Deputy Chief employed by U.S. Citizenship and Immigration Services ("USCIS") ("Ahmed Decl.," Dkt. No. 308-2), and a declaration of Jason K. Axe, Assistant United States Attorney for the Central District of California ("Axe Decl.," Dkt. No. 308-3).

On February 28, 2024, Plaintiffs filed a Reply. ("Reply," Dkt. No. 309.)

**B. Factual Background**

The Motion concerns Defendants' compliance with this Court's October 19, 2023 Order on Plaintiffs' Motion to Compel. A description of the parties' actions in the months since the issuance of that Order is therefore warranted.

First, on December 1, 2023—the day by which Defendants were to have complied with the Court's Order on the Motion to Compel and completed the CAR—Defendants produced an additional twelve documents. (Motion at 2.) Defendants also requested that Plaintiffs stipulate to continue the deadline for producing the complete CAR from December 1, 2023 until February 15, 2024, and to continue the deadline for producing a related privilege log from December 14, 2023 to March 1, 2023. (Id. (citing Coleman Decl., Exh. C).) In email correspondence, Defendants stated that they had identified, but were withholding, additional responsive documents pending the entry of the protective order, which the parties were still negotiating. (Id.)

In addition to the responsive documents Defendants withheld pending entry of the protective order, Defendants also explained that they needed additional time to compile potentially responsive "communications." (Id.) Defendants stated that they had completed searches intended to gather potentially responsive communications, but the documents still had not been ingested into a review database nor substantively reviewed for responsiveness. (Id.) Defendants informed Plaintiffs that the potentially responsive communications would be ingested into the review database within a week, and, once complete, Defendants could then estimate when they could comply with the Order. (Id.) However, Defendants also maintained that they could not begin to review the "communications" until a protective order was in place. (Id.)

On December 6, 2023, Plaintiffs declined to stipulate to extend the compliance deadline, informing Defendants of their opinion that the absence of a protective order did not excuse Defendants' noncompliance. (Id.) Regarding the responsive documents Defendants had identified but withheld pending the entry of a protective order, Plaintiffs offered to treat those documents as confidential pursuant to the agreed-to terms of the protective order which the parties were continuing to negotiate, though the protective order had not yet been entered. (Id.) Plaintiffs requested that Defendants produce the withheld documents by December 8, 2023. (Id.) On December 8, 2023, Defendants declined Plaintiffs' offer to apply the terms of the forthcoming protective order to the withheld documents, and again stated that their "preference is to get the [protective] order issued and then turn over the documents . . . ." (Id.) During December, the parties exchanged additional correspondence concerning the necessity of entering the protective order prior to producing or reviewing documents. (Id.) They did not reach agreement. (Id.)

On January 17, 2024, Plaintiffs notified Defendants of their intent to file a motion enforcing the Court's Order given Defendants' failure to comply. (Coleman Decl., Ex. D, at 1.) During a meet and confer session on January 23, 2024, Defendants informed Plaintiffs that they had not initiated their review of the potentially responsive communications. (Id.)

Though the parties began negotiating a stipulated protective order on June 30, 2023, they did not reach full agreement on its terms until January 22, 2024; that same day, they submitted it to Magistrate Judge Kewalramani for approval. (Opposition at 3 (citing Axe Decl. ¶ 5.) On January 26, 2024, the day after the entry of the protective order ("Protective Order," Dkt. No. 303), Defendants produced the withheld documents they previously identified. (Motion at 4.) The production was comprised of fifteen documents, four of which were redacted. (See Coleman Decl., Ex. E.) Defendants produced a privilege log for those redacted documents and a separate privilege log for the entirely redacted document they produced in their first supplemental production on December 1, 2023. (See Coleman Decl. Exs. E, F.) On February 13, 2024, Defendants served the third supplement to the administrative record, which consisted of a

single document, "Operational Implementation of Migrant Protection Protocols in support of INA Section 235(b)(2)(C)," and a privilege log for that document.[1]  (Axe Decl. ¶ 6.)

All the supplemental documents produced to date fall into Categories 4 and 5.  (Motion at 4.)  Defendants contend that their compliance with the Order concerning Categories 4 and 5 is complete.  (Axe Decl. ¶ 6.)  Plaintiffs disagree and argue that although Defendants' supplemental productions "are a step towards compliance with this Court's Order, they do not represent the complete production of documents this Court identified as missing from categories (4) and (5)."  (Motion at 4.)

As of the date of their Opposition, Defendants were still reviewing the approximately 18,000 documents they identified as potentially responsive communications.  (Axe Decl. ¶ 12.)  Defendants request the Court "order them to continue their review of the documents and update the Court on their progress on complying with the Court's October 19, 2023 Order within 60 days from the date of the hearing and every 60 days following until the supplemental administrative record is complete."  (Opposition at 6.)  Plaintiffs reject this proposal and express concern at the impact such an order would have on the deadline for initiating all discovery (April 5, 2024) and the all-discovery cut-off date (May 20, 2024).  (Motion at 7.)  Defendants are willing to agree to extend the discovery cut-off date and attendant deadlines in light of their failure to timely comply with the Court's Order and complete the administrative record.  (Opposition at 6.)  Plaintiffs respond that because "the class consists of asylum seekers who fled their countries of origin fearing persecution and were deprived of meaningful access to the U.S. asylum process" and therefore "remain stranded in Mexico or elsewhere in precarious situations," Defendants' proposed deadline extensions are not workable.  (Reply at 8.)

## II.    DISCUSSION

"Courts have inherent authority to monitor and enforce their prior orders."  Fraihat v. U.S. Immigr. & Customs Enf't, 2020 WL 2758553, at *3 (C.D. Cal. May 15, 2020) (citing Shillitani v. United States, 384 U.S. 364, 370 (1966)).  Defendants are subject to this Court's clear Order requiring them to complete the administrative record by December 1, 2023.  (Order on MTC.)  Defendants failed to comply with that Order, failed to seek modification of that Order with the Court, and now ask the Court to grant them an indeterminate extension on the Court-ordered deadline they have so casually ignored.  If that were not enough, Defendants' efforts to explain their noncompliance are wholly inadequate and unpersuasive.  In the three months between the Court's Order and the filing of Plaintiffs' Motion, Defendants produced only 25 documents, more than half of which were provided weeks after the Court-ordered deadline.  Defendants admit that at the time they submitted their Opposition, they had produced *zero* documents from three of the five categories the Court identified in its Order and were not (and apparently are not) in a position to produce any documents in those three categories.

---

[1] Notably, Defendants produced this document only after Plaintiffs pointed out in their Motion that Defendants failed to include it in their previous supplements despite the Court's explicit instruction to do so.  (See Motion at 4–5.)

(Opposition at 5–6.)  Defendants' reasons for failing to comply with the Order are twofold: (1) there was simply not enough time, and (2) they held a strong "preference" that a protective order be entered before producing the documents.  (See generally Opposition.)  For the reasons below, the Court finds these arguments unavailing.

With respect to Defendants' argument that they did not have enough time to complete the productions required by the Order, the Court first points out that many of the steps described in Defendants' opposition as precursors to production—initiating a document review database, ingesting documents into the database, creating review panels in the database—are, as Plaintiffs correctly describe, merely "routine parts of litigation document collection." (Opposition at 1; Reply at 4.)  Surely Defendants' counsel were aware of how the document collection and review process works, including any internal policies which might slow the process and hinder Defendants' ability to comply with the Court-ordered deadline.  And although Defendants represent to the Court that they "worked diligently to collect and review documents in compliance with the Court's [O]rder," (Opposition at 5), the declarations Defendants submit with their Opposition indicate that they did not act with any such diligence.  For example, the Court does not understand why Defendants could not assemble document review teams while potentially responsive documents were being identified, nor why the potentially responsive documents had to be collected before the request to create the document review database could be submitted.  (See Axe Decl. ¶ 9.)  Defendants do not explain why these steps needed to occur sequentially, and the Court therefore infers that the process was dictated not by necessity, but instead by Defendants' preferences, or, perhaps, their indolence.  In any event, the facts Defendants provide do not justify the delay.

The Court also rejects Defendants' contention that their preference to delay substantive review of potentially responsive communications until the entry of a protective order justifies their failure to comply.  (See Opposition at 5.)  Defendants argue that "in order to properly mark documents or portions thereof as confidential (in addition to responsive and privilege determinations) and appropriately apply redactions if necessary, reviewers required a stipulated protective order to enable them to make a determination as to confidentiality."  (Id.)  This statement obfuscates the fact that Defendants' review teams could have conducted an initial responsiveness review before embarking on a privilege/confidentiality review of the documents marked responsive.  There was no reason that the entire review process had to wait until the entry of the protective order.  Nor do Defendants say anything about Plaintiffs' offer to treat the documents in accordance with the confidentiality provisions set out in the forthcoming protective order prior to its entry.  It may have been more efficient for Defendants' review teams to look at each document once and apply responsiveness and confidentiality designations during that review, without the risk that the confidentiality designations might need to change after the protective order was finalized.  But Defendants had no right to review the documents in the manner most efficient; they had an obligation to comply with this Court's clear Order, and if compliance was an impossibility, to request the Court modify the deadline for compliance.

The Court finds particularly egregious Defendants' failure to seek modification of the Order.  Defendants chose instead to proceed on their own timeline and force Plaintiffs to file a

motion asking for what they were owed in the first instance. Defendants' conduct is unacceptable. That failure is made even more egregious by Defendants' request that the Court order them to "continue their review of the documents" and provide progress reports every 60 days. (Opposition at 6.) Perhaps if Defendants had made a similar request before the expiration of the Court's December 1, 2023 deadline, the Court may have taken it kindly. Making this request more than *fourth months* after the issuance of the Order—and only after Plaintiffs were forced to make their Motion—demonstrates how casually Defendants consider court-mandated deadlines. The Court declines to ratify Defendants' conduct by approving their request for an open-ended deadline.

Finally, the Court agrees with Plaintiffs' that despite Defendants' representations, they have not necessarily produced all documents which fall within Categories 4 and 5. Defendants are required under Category 4 to produce all documents issued to MPP enrollees, not just the tear sheets and lists of legal service providers Plaintiffs specifically identified. (See Order on MTC at 10–11.) With regard to Category 5, the Order identifies specific documents which must be produced, but also requires production of all implementation guidance documents that are "sufficiently similar or related to the implementation guidance documents which appear in the [initial] CAR" and "all implementing memoranda issued for ICE personnel" that are sufficiently similar to the memoranda included in the initial CAR. (Id. at 14.) To the extent Defendants read the Order to require only the documents identified by name and not documents which fall into these categories but were not so identified, they are incorrect. Defendants are advised to review the Order with this in mind and to produce any additional documents as needed.

In sum, the Court wholly agrees with Plaintiffs' summation that "Defendants' paltry production of supplemental documents, their failure to explain their delay in gathering agreements and meeting records, and their baseless invocation of the protective order to excuse compliance raise serious questions about their diligence." (Motion at 6.) Future failures to comply with this Court's orders may result in findings of contempt and the issuance of sanctions against Defendants. See Shillitani v. United States, 384 U.S. 364, 370 (1966); 18 U.S.C. § 401 ("A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority . . . disobedience or resistance to its lawful writ, process, order, rule, decree, or command"); In re Crystal Palace Gambling Hall, Inc., 817 F.2d 1361, 1364 (9th Cir. 1987); Fed. R. Civ. P. 70(e). The Court **ORDERS** Defendants to complete the Certified Administrative Record promptly, and in any event, no later than **Friday, April 19, 2024**.[2]

### III.   CONCLUSION

For the reasons above, the court **GRANTS** Plaintiffs' Motion to Enforce Compliance with Court Order and **VACATES** the April 8, 2024 hearing. The Court **ORDERS** Defendants

---

[2] The Court is amenable to a reasonable continuation of Scheduling Order deadlines as suggested by the parties but will not approve any extension which unduly prejudices Plaintiffs and rewards Defendants for their failure to timely complete the CAR.

to complete the certified administrative record promptly, and in any event, no later than **Friday, April 19, 2024**.

**IT IS SO ORDERED.**