UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-9893 JGB (SHKx)** | Date | May 12, 2025 |
| Title | ***Immigrant Defenders Law Center, et al. v. Kristi Noem, et al.*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

Proceedings:     **Order (1) DENYING Defendants' Ex Parte Application to Stay the Stay
of Agency Action Under 5 U.S.C. § 705 (Dkt. No. 407) (IN
CHAMBERS)**

    Before the Court is the Department of Homeland Security ("DHS"), DHS Secretary, the
U.S. Customs and Border Protection ("CBP"), CBP Commissioner, the Executive Assistant
Commissioner of CBP's Office of Field Operations ("OFO"), Border Patrol Chief, U.S.
Immigrations and Customs Enforcement ("ICE"), and Acting Director of ICE's (collectively,
"Defendants" or the "Government") ex parte application to stay, pending appeal, the Court's
order to stay agency action under 5 U.S.C. § 705 ("Section 705"). ("Application," Dkt. No.
407.) The Court finds the Application appropriate for resolution without a hearing. See Fed. R.
Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the
Application, the Court **DENIES** the Application.

## I.     BACKGROUND

### A.  Procedural Posture

    Because the parties are familiar with this case's extensive procedural history, the Court
provides only the background necessary to understand the Application.

    In 2019, the DHS adopted the Migrant Protection Protocols ("MPP" or "MPP 1.0")
policy pursuant to 8 U.S.C. § 1225(b)(2)(C). Under 8 U.S.C. § 1225(b)(2)(C), noncitizens
"arriving on land (whether or not at a designated port of arrival) from a foreign territory

contiguous to the United States," may be returned to "that territory pending a proceeding under
[8 U.S.C.] section 1229a . . . ."

On December 22, 2021, Plaintiffs filed a Second Amended Complaint. ("SAC," Dkt.
No. 175.) The SAC was filed on behalf of Immigrant Defenders Law Center ("ImmDef"),
Jewish Family Service of San Diego ("JFS") (together, "Organizational Plaintiffs"), and twelve
individuals and others similarly situated: Lidia Doe, Antonella Doe, Rodrigo Doe, Chepo Doe,
Yesenia Doe, Sofia Doe, Gabriela Doe, Ariana Doe, Francisco Doe, Reina Doe, Carlos Doe, and
Dania Doe (collectively, "Individual Plaintiffs"). (SAC ¶¶ 13-25.) The SAC alleges harms
arising from the initial implementation of MPP by the Trump Administration and certain actions
by the Biden Administration in ceasing its wind-down of the policy. (See id. ¶¶ 26-33.) Plaintiffs
assert the following claims for relief: (1) violation of the Administrative Procedure Act ("APA")
premised on the violation of the right to apply for asylum on behalf of Individual and
Organizational Plaintiffs; (2) violation of the APA premised on the violation of the right to access
counsel on behalf of Individual and Organizational Plaintiffs; (3) violation of the Fifth
Amendment Due Process Clause right to a full and fair hearing on behalf of Individual Plaintiffs;
(4) violation of the APA premised on the unlawful cessation of the MPP wind-down on behalf of
six Individual Plaintiffs and Organizational Plaintiffs; (5) violation of the First Amendment on
behalf of Individual Plaintiffs; and (6) violation of the First Amendment on behalf of
Organizational Plaintiffs. (Id. ¶¶ 329-391.)

On January 26, 2022, Defendants filed a motion to dismiss the SAC. ("MTD SAC,"
Dkt. No. 189.) On February 17, 2022, Plaintiffs filed a motion for class certification.
("Certification Motion," Dkt. No. 205.) On December 14, 2022, Plaintiff Rodrigo Doe filed a
notice of voluntary dismissal of individual claims pursuant to Federal Rule of Civil Procedure
41(a)(1)(A). (Dkt. No. 255.) On March 15, 2023, the Court granted-in-part and denied-in-part
the MTD SAC and granted the Certification Motion. (Dkt. No. 261.) The Court dismissed the
APA claim premised on the unlawful cessation of the MPP wind-down without leave to amend.
(Id. at 41-44.) The Court also certified the "Inactive MPP 1.0 Class" comprised of "[a]ll
individuals subjected to MPP 1.0 prior to June 1, 2021, who remain outside the United States and
whose cases are not currently active due to termination of proceedings or a final removal
order[,]" and three subclasses:

> **1. The "Terminated Case Subclass":**
> All individuals subjected to MPP 1.0 prior to June 1, 2021,
> who remain outside the United States and whose MPP
> proceedings were terminated and remain inactive.
>
> **2. The "In Absentia Subclass":**
> All individuals subjected to MPP 1.0 prior to June 1, 2021,
> who remain outside the United States, received an in absentia
> order of removal in MPP proceedings, and whose cases have
> not been reopened and are not currently pending review
> before a federal circuit court of appeals.

### 3. The "Final Order Subclass":
All individuals subjected to MPP 1.0 prior to June 1, 2021, who remain outside the United States, received a final order of removal for reasons other than failure to appear for an immigration court hearing, and whose cases have not been reopened and are not currently pending review before a federal circuit court of appeals.

(Id. at 49-50.)

On October 2, 2024, the Court granted the parties' joint stipulation to stay the matter pending settlement discussions. (Dkt. No. 360.) On February 5, 2025, the parties filed a joint stipulation to lift the stay and modify the scheduling order. (Dkt. No. 369.) Specifically, Plaintiffs "believe that settlement is no longer viable because, in part, . . . Defendants publicly announced on January 21, 2025, that they are 'reinstat[ing]' the '2019 MPP Policy' immediately." (Id. at 1.) The Court granted the parties' stipulation to lift the stay and modify the scheduling order on February 13, 2025. (Dkt. No. 374.)

On February 11, 2025, ImmDef filed an ex parte application to stay the reimplementation of MPP under Section 705. ("Stay Application," Dkt. No. 371.) In support of the Stay Application, ImmDef filed a declaration of attorney Hannah Coleman ("Coleman Decl.," Dkt. No. 371-2) alongside exhibits A-F (Dkt. Nos. 371-3-8), which included:

- A declaration of Co-Founder, President, and Chief Executive Officer of ImmDef Linda Toczylowski ("Toczylowski Decl., Exhibit A," Dkt. No. 371-3);
- A declaration of Directing Attorney of Policy and Advocacy at ImmDef Margaret Cargioli ("Cargioli Decl., Exhibit B," Dkt. No. 371-4);
- DHS' Explanation of the Decision to Terminate the Migrant Protection Protocols (Oct. 29, 2021), submitted in the Administrative Record in Texas v. Biden, No. 2:21-cv-0067 (N.D. Tex. Sept. 2, 2022), at AR00005-43 ("Explanation Memo, Exhibit C," Dkt. No. 371-5);
- A report from Human Rights Watch ("HRW") titled "US Move Puts More Asylum Seekers at Risk" (Sept. 25, 2019), bearing the bates numbers DHS00000691-99 ("HRW Report, Exhibit D," Dkt. No. 371-6); and
- DHS' Termination of the Migrant Protection Protocols (Oct. 29, 2021), submitted in the Administrative Record in Texas v. Biden, No. 2:21-cv-0067 (N.D. Tex. Sept. 2, 2022), at AR00001-4 ("Termination Memo, Exhibit E," Dkt. No. 371-7).

On April 16, 2025, the Court granted the Stay Application. ("Order," Dkt. No. 405.) On April 21, 2025, Defendants appealed the Order to the Ninth Circuit. ("Appeal," Dkt. No. 406.) The same day, Defendants filed the Application. (Application.) ImmDef opposed the Application on February 23, 2025. ("Opposition," Dkt. No. 409.)

**B.  Related Proceedings**

On October 29, 2021, then DHS Secretary Alejandro Mayorkas issued memoranda
terminating MPP and explaining the reasons for doing so.  (See Explanation Memo, Exhibit C;
Termination Memo, Exhibit E (collectively, "October 29 Memoranda").)

On December 15, 2022, the U.S. District Court for the Northern District of Texas issued
an order "stay[ing] the October 29 Memoranda and corresponding decision to terminate MPP
pending final resolution of the merits of th[e] action."  Texas v. Biden, 646 F. Supp. 3d 753, 764,
781 (N.D. Tex. 2022).  On February 14, 2023, the Government appealed that order to the Fifth
Circuit.  The Government voluntarily dismissed its appeal, which the Fifth Circuit granted on
May 15, 2023.  Texas v. Biden, No. 23-10143 (5th Cir. Jul. 17, 2023).  The October 29
Memoranda, therefore, remain stayed.  On October 6, 2023, the Government represented that
"[b]ecause the United States cannot unilaterally return noncitizens to Mexico under MPP
without Mexico's consent, their withdrawal of consent renders restarting MPP impossible."
Texas v. Biden, Case No. 21-cv-0067 (N.D. Tex.), Dkt. No. 205 at 4.

On January 21, 2025, DHS announced that it was resuming implementation of MPP 1.0
because "[t]he situation at the border has changed and the facts on the ground are favorable to
resuming implementation of the 2019 MPP Policy."  U.S. Dep't of Homeland Security, DHS
Reinstates Migrant Protection Protocols, Allowing Officials to Return Applicants to Neighboring
Countries (Jan. 21, 2025) ("Reinstatement Announcement"), available at:
https://www.dhs.gov/news/2025/01/21/dhs-reinstates-migrant-protection-protocols; see also
Executive Order, Securing Our Borders (Jan. 20, 2025), available at:
https://www.whitehouse.gov/presidential-actions/2025/01/securing-our-borders/.

On January 22, 2025, the district court in Texas v. Biden, Case No. 21-cv-0067 (N.D.
Tex.), ordered the parties to submit a joint brief detailing how the Reinstatement Announcement
"bears on the disposition of th[e] litigation."  Id., Dkt. No. 207.  On January 31, 2025, the parties
filed a joint brief asserting that the Reinstatement Announcement "does not yet moot th[e] case"
and "request[ing] that the court hold th[e] case in abeyance for 180 days while incoming
leadership at [DHS] assesses th[e] case and how to proceed."  Id., Dkt. No. 211 at 1.  The
Government also represented that "MPP has been reimplemented and will be operational during
[the requested stay period of 180 days]."  Id., Dkt. No. 211 at 2.  On February 5, 2025, the district
court stayed all proceedings and deadlines in the case until July 30, 2025.  Id., Dkt. No. 213.

## II.    FACTUAL ALLEGATIONS

Asylum is designed to provide legal status to noncitizens who fear persecution in other
countries.  Noncitizens are eligible for asylum in the United States if they have either been
persecuted or have a well-founded fear of future persecution on account of their race, religion,
nationality, membership in a particular social group, or political opinion, and if they are unable or
unwilling to return to their country of origin because of that persecution or fear.  8 U.S.C. §

1101(a)(42)(A).  Although a grant of asylum is discretionary, the right to apply is not.  8 U.S.C. §
1158(a)(1).

From January 2019 to February 2021, the MPP policy orchestrated by Defendants[1]
trapped nearly 70,000 asylum seekers in Mexico in dangerous conditions that impeded their
ability to access the U.S. asylum system or obtain legal representation.  (SAC ¶¶ 1, 57, 60, 61.)  In
February 2021, Defendants suspended MPP and initiated a "wind-down" process for asylum
seekers with active cases.  (Id. ¶ 79.)  In doing so, former DHS Secretary Alejandro Mayorkas
conceded that MPP's "[i]nadequate access to counsel casts doubt on the reliability of removal
proceedings."  (Id. ¶ 61.)

The wind-down allowed some individuals who were subjected to MPP to enter the
United States to pursue their asylum claims.  (Id. ¶ 79.)  In June 2021, Defendants expanded the
wind-down process to include individuals with terminated cases and in absentia removal orders.
(Id. ¶ 81.)  However, those with in absentia removal orders were required to successfully reopen
their cases to be eligible to enter the United States.  (Id.)

On August 13, 2021, the U.S. District Court for the Northern District of Texas issued a
nationwide permanent injunction ordering the Government to restart MPP for certain new
arrivals at the U.S.-Mexico Border.  (Id. ¶¶ 74-75.)  In response, Defendants ceased the wind-
down process to comply with the order.  (Id.)  During this period, thousands of individuals with
final orders of removal or terminated cases remained outside of the U.S. in "legal limbo,"
deprived of meaningful access to the U.S. asylum system and their right to counsel, to a full and
fair hearing, and to petition the courts.  (Id. ¶¶ 85, 97-102.)

The eleven Individual Plaintiffs are asylum seekers who were subjected to MPP 1.0 and
either had their cases terminated or received final orders of removal.  (See id. ¶¶ 13-23, 110-268.)
They assert that MPP stranded them in perilous conditions outside the United States with no
viable way to pursue their asylum claims.  (Id. ¶¶ 86-93.)  Organizational Plaintiffs allege that the
manner in which Defendants implemented MPP—i.e., depriving individuals subjected to MPP
who remain outside the United States of legal representation—violated the APA and their First
Amendment right to advise potential and existing clients, frustrated their missions, and required
them to expend resources they otherwise would invest in other programs.  (Id. ¶¶ 270, 329-353,
361-372, 381-391.)  Individual Plaintiffs allege that the implementation of MPP violated their
statutory rights to seek asylum and access counsel, their Fifth Amendment right to a full and fair
hearing, and their First Amendment right.  (Id. ¶¶ 329-91.)  Plaintiffs also claim that Defendants'
cessation of the wind-down was unlawful.  (Id. ¶¶ 361-72.)  Plaintiffs seek declaratory and
injunctive relief and costs incurred in maintaining the action.  (Id., Prayer for Relief.)  Among
other forms of relief, Plaintiffs seek an order that would "[a]llow each of the Individual Plaintiffs
and class members to return to the United States . . . for a period sufficient to enable them to seek
legal representation, and pursue their asylum proceedings from inside the United States."  (Id.)

---

[1] Although the individuals who hold official positions have changed, the positions have
not.

**CIVIL MINUTES—GENERAL**                         Initials of Deputy Clerk mg

### III.    LEGAL STANDARD

When addressing a motion to stay pending appeal, a court must consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Nken v. Holder, 556 U.S. 418, 434 (2009) (internal quotations and citation omitted).

The first two factors are the most critical. Id. at 434. Indeed, "stays must be denied to all petitioners who did not meet the applicable irreparable harm threshold, regardless of their showing on the other stay factors." Leiva-Perez v. Holder, 640 F.3d 962, 965 (9th Cir. 2011). "A stay is not a matter of right, even if irreparable injury might otherwise result." Nken, 556 U.S. at 433 (internal quotations omitted). "It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." Id. (internal quotations and brackets omitted). The party seeking a stay "bears the burden of showing that the circumstances justify an exercise of that discretion." Id. at 433-34.

To make a strong showing of the likelihood of success on the merits, it is not sufficient to show that the chance of success on the merits is "better than negligible" or that there is some "possibility of irreparable injury." Id. at 434 (internal quotations and citations omitted). "Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest." Id. at 435. Where, as here, the moving party is the Government, the last two factors may "closely align[]." See Lair v. Bullock, 697 F.3d 1200, 1215 (9th Cir. 2012).

### IV.    DISCUSSION

Defendants move the Court to stay the Order pending appeal to the Ninth Circuit. (See Application at 1.) Alternatively, Defendants request that the Court narrow the Order's scope to the Central District of California "to tailor the remedy to the specific harm allegedly shown." (See id.) Since the Application reads largely like a motion to reconsider the Order, the Court finds that its Order effectively addresses most of the arguments raised in the pending Application. (See Order; Application.) As such, the Court will not address arguments reasserted by Defendants that it already rejected in its Order. Instead, the Court will address Defendants' newly proffered arguments and will set forth its reasons for why Defendants have not met their burden of showing that a stay of the Order is justified.

**A. Success on the Merits**

In their Application, Defendants reassert the following arguments: (1) ImmDef lacks standing under Hippocratic Medicine and Havens and its claims are outside the INA's zone of interest; (2) ImmDef's claims are not ripe for judicial review; (3) the Stay Application is procedurally barred; (4) 8 U.S.C. § 1252(f)(1) ("Section 1252(f)(1)") bars this Court's

jurisdiction; (5) MPP does not involve content-based restrictions on speech; (6) 8 U.S.C. §§
1252(a)(5) and (b)(9) bar ImmDef's right-to-counsel and asylum claims because they are
inextricably linked to removal proceedings; (7) MPP does not violate the INA's right to counsel
in removal proceedings; and (8) MPP does not violate the INA's right to apply for asylum. (See
Application at 2-11; see also Food & Drug Administration v. Alliance for Hippocratic Medicine,
602 U.S. 367 (2024); Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982). While Defendants
identify issues they intend to raise on appeal, they mainly repeat arguments that this Court has
already considered and rejected. (See generally Application; Order.) Defendants also do not
point to any recent decisions or developments that would bolster their arguments. The Court
finds that this weighs against Defendants' likelihood of success. See, e.g., Ahlman v. Barnes,
2020 WL 4039073, at *1 (C.D. Cal. June 2, 2020) (finding that defendants had not demonstrated
a likelihood to succeed on the merits where they raised some arguments that the court had
already considered and rejected, and pointed to a poorly analogous recent decision); Cesca
Therapeutics Inc. v. SynGen Inc., 2017 WL 1174062, at *3 (E.D. Cal. Mar. 30, 2017) ("[T]he
lack of new substantive arguments weighs against likelihood of success on the merits.").

Defendants further assert that the Order is ambiguous regarding the action the Court is
staying: the reimplementation of MPP since January 2025, or the 2019 version of MPP and the
relevant guidance documents. (See id. at 6.) Insofar as the Court's "reimplementation of MPP"
language refers to MPP as DHS reinstated in January 2025, Defendants argue that action is not
justiciable because it is not a final agency action (nor a legal directive) capable of being stayed.
(See id.) However, if the "reimplementation of MPP" refers to MPP itself, Defendants reassert
their argument that the stay request is not justiciable because ImmDef's claims do not challenge
the validity of MPP itself; instead, the claims challenge DHS's execution of MPP and its effect
on ImmDef's business and on the Individual Plaintiffs' ability to apply for asylum and their
access to counsel. (See id. at 7.) For Defendants, such claims can only be challenged as actually
applied, and ImmDef has not shown any concrete injuries because of MPP itself. (See id.)

First, the Court finds that there is no meaningful difference between the 2019 version of
MPP and its reimplementation as of January 2025. Defendants have given no indication of their
intent to apply MPP differently—instead, they have indicated that they were "restarting" the
"2019 MPP Policy"—and publicly stated that the 2019 directives were in place. See
Reinstatement Announcement; Texas v. Biden, Case No. 21-cv-0067 (N.D. Tex.), Dkt. No. 211
at 2; ("Stay Application Opposition," Dkt. No. 378 at 19, n.7 (referring and citing to the 2019
ERO implementation memo as the "current operative guidance").) As such, the Order stayed
the 2025 reimplementation of the 2019 version of MPP pending the conclusion of this litigation.
(See Order.)

Second, the Court finds that the 2019 version of MPP and its 2025 reimplementation
constitute final agency action. For an agency's decision to be considered final, the action "must
mark the 'consummation' of the agency's decisionmaking process" and "the action must be one
by which 'rights or obligations have been determined,' or from which 'legal consequences will
flow.'" Bennett v. Spear, 520 U.S. 154, 177 (1997). The challenged action in the SAC and in the
Stay Application—2019 MPP 1.0 and its 2025 reimplementation—includes several different

memoranda and directives that determined the implementation of the policy. (See SAC ¶¶ 58–59; Stay Application.) As the Termination Memo makes clear, the implementation of MPP marked the "consummation" of DHS's decisionmaking process—DHS staff were bound to "implement MPP across the southern border." See Termination Memo, Exhibit E at 80; see also Bennett, 520 U.S. at 177–78 (determining that a claim that a biological opinion failed to comply with Endangered Species Act's requirement for use of best scientific and commercial data available was reviewable under the APA); ONRC Action v. Bureau of Land Mgmt., 150 F.3d 1132, 1137 (9th Cir. 1998) (citing cases in which final agency action is demonstrated by a "conscious decision arrived at by the agency" or a "deliberate decision . . . to act or not to take action"); cf. Biden v. Texas, 597 U.S. 785, 808–10 (2022) (explaining that DHS's June 1, 2021 MPP Termination Memo, as well as the October 29, 2021 Termination Memo, were both final agency actions, "each of them an 'agency statement . . . designed to implement, interpret, or prescribe law or policy'") (quoting 5 U.S.C. § 551(4)). Moreover, legal consequences flowed from the implementation of MPP in 2019 and will flow from its 2025 reimplementation because it has actual or immediately threatened effects on both ImmDef and the population it serves. (See Order at 29-30); see also Aracely, R. v. Nielsen, 319 F. Supp. 3d 110, 139 (D.D.C. 2018) (finding final agency action when a policy had "profound and immediate consequences" for plaintiffs whose parole was declined due to consideration of a deterrence policy); Wagafe v. Trump, 2017 WL 2671254, at *10 (W.D. Wash. June 21, 2017) (finding final agency action when a policy "affect[ed] the thousands of applicants whose qualified applications [we]re allegedly indefinitely delayed or denied without explanation" as a result). Accordingly, MPP constitutes final agency action subject to APA review.

Defendants also argue that the Order "counters the court's order in Texas v. Biden, which stayed Secretary Mayorkas's October 29 Memoranda and corresponding decision to terminate MPP pending final resolution of the merits of that case." (See Application at 8 (citing 646 F. Supp. 3d at 781).) For Defendants, the Order highlights the multitude of problems inherent in a court staying agency action already in effect and in issuing such relief on a nationwide basis. (See id.) The Court disagrees. The Texas v. Biden case is in abeyance until July 2025, and it is unclear whether there even remains a case or controversy in that matter. (See Order at 6 (citing and quoting Texas v. Biden, Case No. 21-cv-0067 (N.D. Tex.), Dkt. No. 211 at 1-2).) Moreover, Texas v. Biden is considering a separate agency action—the October 29 Memoranda and DHS' corresponding decision to terminate MPP. See 646 F. Supp. 3d at 761. Whereas, here, the Court is considering the 2025 reimplementation of MPP 1.0.

Accordingly, Defendants have not made a strong showing that they are likely to succeed on the merits.

## B. Irreparable Harm to Defendants and Public Interest

Defendants argue that the Order "necessarily imposes irreparable harm on the [G]overnment and the public" because the Government "suffers a form of irreparable injury" "[a]ny time [it] is enjoined by a court from effectuating statutes enacted by representatives of its people." (See Application at 11 (quoting Maryland v. King, 567 U.S. 1301, 1303 (2012) (Roberts,

C.J., in chambers)).)  For Defendants, that is particularly true here because rules governing immigration "implement[] an inherent executive power."  (See id. (quoting United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 542 (1950) ("[I]t is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given [noncitizen]")).)

However, the Court reiterates that DHS neither has the discretionary authority nor legitimate reasons to enforce programs that violate the constitution or federal law.  See United States v. U.S. Coin & Currency, 401 U.S. 715, 726 (1971) (Brennan, J., concurring); Valle del Sol Inc. v. Whiting, 732 F.3d 1006, 1029 (9th Cir. 2013); Wong v. United States, 373 F.3d 952, 963 (9th Cir. 2004) ("Moreover, decisions that violate the Constitution cannot be 'discretionary . . . .'").  As implemented, MPP 1.0 had "inherent problems . . . that no amount of resources c[ould] sufficiently fix," and the Government has made clear it intends to reimplement the same "2019 MPP Policy."  (See Explanation Memo, Exhibit C at 65; Termination Memo, Exhibit E); Reinstatement Announcement.  ImmDef also has established a likelihood of success on the merits of its constitutional and APA claims against Defendants, and "there is no harm to the Government when a court prevents the Government from engaging in unlawful practices."  See Castillo v. Barr, 449 F. Supp. 3d 915, 923 (C.D. Cal. 2020); Torres v. U.S. Dep't of Homeland Sec., 2020 WL 3124216, at *9 (C.D. Cal. Apr. 11, 2020) ("As a general rule, 'it is always in the public interest to prevent the violation of a party's constitutional rights.'") (quoting Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)); Hernandez v. Sessions, 872 F.3d 976, 996 (9th Cir. 2017) (finding that the "public interest benefits" when "individuals are not deprived of their liberty" by a "likely unconstitutional process"); Huisha-Huisha v. Mayorkas, 27 F.4th 718, 734 (D.C. Cir. 2022) (recognizing the benefit of sparing individuals "extreme violence").

Further, the Order does not improperly intrude into the Executive's authority.  First, the Constitution vests Congress—not the Executive—with "plenary power over immigration."  Sec. & Exch. Comm'n v. Jarkesy, 603 U.S. 109, 129 (2024).  Second, Defendants improperly rely on Shaughnessy, which concerned the narrower issue of the power to exclude noncitizens during wartime—which the Supreme Court located within both the legislative and executive branches—and not the immigration system, which is governed by statutes enacted by Congress.  See 338 U.S. at 542–43.  In sum, the Executive does not have the "conclusive and preclusive" power over immigration that permits it to disregard immigration statutes such as the INA's right to apply to asylum and right to counsel.  Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 638 (1952) (Jackson, J., concurring).

Accordingly, the Court finds that Defendants have not shown that they will be irreparably injured absent a stay of the Order pending appeal.  Moreover, public interest strongly favors denying the Application.  Because Defendants failed to make the threshold showing of irreparable harm, "a stay may not issue."  Leiva-Perez, 640 F.3d at 971.  Still, the Court briefly considers the remaining Nken factor and concludes that it does not weigh in favor of granting the Application.

//
//

## C.  Irreparable Harm to ImmDef and Other Interested Parties

Defendants reassert their argument that because ImmDef has not alleged any current examples of individuals impacted by MPP's reimplementation, the injury alleged by ImmDef stems from the past and/or is a speculative future injury.  (See Application at 13.)  The Court rejects Defendants' arguments for the reasons set forth in its Order.  (See Order at 28-30.)

Defendants' own statements "demonstrate [an] immediate threatened injury" to warrant a stay of MPP's reimplementation because ImmDef is "likely to suffer irreparable harm before a decision on the merits can be rendered."  See Boardman v. Pac. Seafood Grp., 822 F.3d 1011, 1022-23 (9th Cir. 2016); see also Reinstatement Announcement; Texas v. Biden, Case No. 21-cv-0067 (N.D. Tex.), Dkt. No. 213.  Further, Defendants' reimplementation of MPP will cause ImmDef irreparable harm.  These harms include, impairing its ability to provide meaningful legal representation to clients in removal proceedings; jeopardizing the safety of its staff; threatening its financial stability; and otherwise undermining its core business activities.  (See Toczylowski Decl., Exhibit A ¶¶ 7–15, 21–25.)

Further, MPP 1.0 trapped 70,000 asylum seekers in dangerous conditions in Mexico where tens of thousands experienced extraordinary risks to their personal safety.  (See Order at 6, 29; SAC ¶¶ 1, 57, 60, 61; Cargioli Decl., Exhibit B ¶ 9; HRW Report, Exhibit D at 7-8.)  Staying the Order would mean that asylum seekers will once again be subjected to violence, deprived of their ability to access the asylum system, and stripped of their ability to access and communicate with counsel.  Moreover, the Terminated Case Subclass face the threat of immediate or irreparable injury should they approach the United States border to seek asylum, as they could again be placed in MPP.  (See Order at 9.)  Accordingly, the Court finds that ImmDef, the Terminated Case Subclass if they reattempt to seek asylum, and asylum seekers generally will be irreparably harmed by a stay of the Order pending appeal.

## D.  Scope of Relief

The Court also rejects Defendants' request to narrow the Order's scope to the Central District of California.  "[W]here agency action is challenged as a violation of the APA, nationwide relief is commonplace."  Nat'l TPS All. v. Noem, 2025 WL 957677, at *12, 15 (N.D. Cal. Mar. 31, 2025), appeal docketed, 25-2120 (9th Cir. Apr. 2, 2025) (citing E. Bay Sanctuary Covenant v. Biden, 993 F.3d 640, 680-81 (9th Cir. 2021) ("ESBC III").  Further, "[i]n the context of immigration law, broad relief is appropriate to ensure uniformity and consistency in enforcement."  EBSC III, at 681 (internal citations omitted); Texas v. United States, 40 F.4th 205, 229 n.18; Texas v. Biden, 646 F. Supp. 3d at 781.  A stay limited to the Central District would also not remedy ImmDef's inability to meet with potential clients, who would be located outside this District.  Moreover, any such limitation would defeat the purpose of a Section 705 stay—to maintain the "relevant status quo," which would not be achieved by a "piecemeal approach."  (See Order at 31-32 (quoting Texas v. Biden, 646 F. Supp. 3d at 781).)

//

---

**CIVIL MINUTES—GENERAL**

## V.    CONCLUSION

For the reasons above, the Court **DENIES** Defendants' Application.  Pending appeal to the Ninth Circuit, the Order remains in effect and the relief afforded here is nationwide in scope.


**IT IS SO ORDERED.**